No. 25-2509

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PWGG, LP, et al.,

Plaintiffs-Appellants,

v.

ROB BONTA, in his official capacity as Attorney General of the
State of California, et al.,

Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the Southern District of California

No. 3:19-cv-01226
The Honorable M. James Lorenz

## BRIEF OF AMICI CURIAE ILLINOIS, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

ALEX HEMMER
Deputy Solicitor General
AKANKSHA SHAH
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ii

IDENTITY AND INTEREST OF AMICI STATES ................................. 1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT ........................................................................................... 5

I.    The Second Amendment Allows States to Enact Measures to Promote Gun Safety and Protect Against Gun Violence That Are Consistent with Historical Tradition................................................ 5

II.   California's Age-Based Regulation Is Consistent With Measures Taken By Other States And Upheld By Courts Across The Country .................................................................................... 11

III.  Plaintiffs' Arguments Lack Merit ................................................. 18

CONCLUSION ...................................................................................... 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bianchi v. Brown,*
111 F.4th 438 (4th Cir. 2024) (en banc) ........................................... 1

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ......................................................... 6, 18

*Durning v. Citibank, N.A.,*
950 F.2d 1419 (9th Cir. 1991) ......................................................... 23

*Jones v. Bonta,*
34 F.4th 704 (9th Cir.) ......................................................... 23

*Lara v. Comm'r, Pa. State Police,*
125 F.4th 428 (3d Cir. 2025) ......................................................... 14

*McCoy v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
140 F.4th 568 (4th Cir. 2025) ...................................... 15, 16, 25, 26

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ......................................................... 6, 7, 19

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ......................................................... 5

*Nat'l Rifle Ass'n v. Bondi,*
133 F.4th 1108 (11th Cir. 2025) (en banc) ......................... 16, 17, 25

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
597 U.S. 1 (2022) ......................................... 4, 6, 7, 8, 9, 10, 19, 21

*United States v. Morrison,*
529 U.S. 598 (2000) ......................................................... 5

*United States v. Lopez,*
514 U.S. 549 (1995) ......................................................... 5

*United States v. Perez-Garcia*,
    96 F.4th 1166 (9th Cir. 2024).........................................................23

*United States v. Rahimi*,
    602 U.S. 680 (2024) .........................6, 8, 9, 10, 11, 20, 21, 22, 23, 24

*United States v. Rahimi*,
    61 F.4th 443 (5th Cir. 2023)...............................................9, 20, 23

*Worth v. Jacobson*,
    108 F.4th 677 (8th Cir. 2024).......................................................13

# HISTORICAL STATUTES

27 Stat. 116-17 ..................................................................................24

16 Del. Laws 716 (1881) ...................................................................24

1881 Ill. Laws 73 ...............................................................................24

# STATUTES, REGULATIONS, AND RULES

18 U.S.C. § 921 ...................................................................................3

430 Ill. Comp. Stat.
    65/2 ..............................................................................................14
    65/3 ..............................................................................................12
    65/4 .......................................................................................12, 14
    66/25 ............................................................................................13

720 Ill. Comp. Stat. 5/24-1 ...............................................................13

Alaska Stat.
    § 11.61.220....................................................................................14
    § 18.65.705....................................................................................14

Ariz. Rev. Stat
    § 13-3102.......................................................................................14
    § 13-3112.......................................................................................14

iii

Ark. Code Ann. § 5-73-309 ....................................................... 14

Cal. Penal Code
    § 26150 ...................................................................... 13
    § 26155 ...................................................................... 13
    § 26170 ...................................................................... 13
    § 27505 ...................................................................... 12
    § 27510 ...................................................... 2, 12, 26

Colo. Rev. Stat.
    § 18-12-112.5 ........................................................... 12
    § 18-12-203 .............................................................. 14

S.B. 1100, 2017-2018 Reg. Sess. (Cal. 2018)............................ 2

S.B. 61, 2019-2020 Reg. Sess. (Cal. 2019) ............................. 3

Conn. Gen. Stat.
    § 29-28 ..................................................................... 13
    § 29-34 ..................................................................... 12
    § 29-35 ..................................................................... 13
    § 29-36 ..................................................................... 14

D.C. Code Ann.
    § 7-2502 ............................................................. 12, 14
    § 7-2509 ................................................................... 13
    § 22-4507................................................................. 12

Del. Code Ann. tit. 24 § 903 ................................................ 12

Del. Crim. Code Ann. tit. 11, § 1448 .............................. 13, 14

Fla. Stat.
    § 790.053.................................................................. 13
    § 790.06................................................................... 13
    § 790.065................................................................. 12

Ga. Code Ann.
    § 16-11-125 ............................................................. 13

§ 16-11-126 ................................................................ 13
§ 16-11-129 ................................................................ 13

Haw. Rev. Stat. Ann.
§ 134-2 .............................................................. 12, 14
§ 134-9 ................................................................ 13

Iowa Code § 724.22 ...................................................... 14

Ky. Rev. Stat. Ann. § 237.110 ...................................... 14

La. Rev. Stat. § 40:1379 .............................................. 14

Mass. Gen. Laws. ch. 140,
§ 129B ................................................................ 12
§ 131.............................................................. 12, 13

Md. Code Ann., Pub. Safety
§ 5-101 ................................................................ 14
§ 5-133 ............................................................ 13, 14
§ 5-134 ................................................................ 12

Mich. Comp. Laws
§ 28.422............................................................ 12
§ 28.425............................................................ 14

Minn. Stat. § 624.714 ................................................ 13

N.C. Gen. Stat. § 14-415.12...................................... 14

Neb. Rev. Stat.
§ 69-2403............................................................ 12
§ 69-2404............................................................ 12
§ 69-2433............................................................ 14

Nev. Rev. Stat. § 202.3657 ........................................ 14

N.J. Stat. Ann. § 2C:58.................................... 12, 13, 14

N.M. Stat. § 29-19-4 .................................................. 14

N.Y. Penal Law
    § 265.65 ................................................................... 12
    § 400.00 ........................................................... 12, 13, 14

Ohio Rev. Code
    § 2923.125 ............................................................... 14
    § 2923.21 ................................................................. 12

Okla. Stat. tit. 21, § 1272 ............................................... 13

Or. Rev. Stat. § 166.291 ............................................... 14

18 Pa. Cons. Stat. § 6109 ............................................. 14

R.I. Gen. Laws
    § 11-47-11 ............................................................... 13
    § 11-47-18 ............................................................... 13
    § 11-47-35 ............................................................... 12
    § 11-47-37 ............................................................... 12

Utah Code § 76-11-202 ................................................ 14

Va. Code Ann. § 18.2-308.02 ....................................... 14

Vt. Stat. Ann. tit. 13, § 4020 ...................................... 12

Wash. Rev. Code § 9.41.240 .................................... 12, 14

Wyo. Stat.
    § 6-8-104 ................................................................. 14
    § 6-8-404 ................................................................. 12

## IDENTITY AND INTEREST OF AMICI STATES

The States of Illinois, Colorado, Connecticut, Delaware, the District of Columbia, Hawaiʻi, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington ("Amici States" or "States") respectfully submit this amicus brief in support of Defendant-Appellee Rob Bonta, Attorney General of California, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Bianchi v. Brown*, 111 F. 4th 438, 442 (4th Cir. 2024) (en banc) (describing the "basic obligation of government to ensure the safety of the governed").

To serve that interest, a substantial majority of States have historically implemented measures that regulate the sale and use of firearms for individuals under the age of 21. Although the States have reached different conclusions on how best to regulate in this area, they share an interest in protecting their right to address gun violence in a

1

way that is both consistent with the Nation's historical tradition and tailored to the specific circumstances in their States. California's regulation of the purchase of firearms by individuals under the age of 21 is a historically sound vindication of its interest in promoting public health and safety. Accordingly, the Amici States urge this Court to affirm the district court's judgment.

## SUMMARY OF ARGUMENT

In the wake of the tragic shooting by a 19-year-old individual at Marjory Stoneman Douglas High School in Parkland, Florida, the California Legislature amended Section 27510 of the California Penal Code, which previously restricted sale of handguns to individuals under the age of 21, to also restrict, among other things, the sale, rental, delivery, or transfer of long guns by licensed firearms dealers to individuals under the age of 21 who have not obtained a hunting license from the Department of Fish and Wildlife. S.B. 1100, 2017-2018 Reg. Sess. (Cal. 2018).[1] One year later, the legislature further amended

---

[1] The statute exempts active, active reserve, and honorably discharged members of the United States Armed Forces or National Guard, as well as peace officers, federal officers, and law enforcement agents authorized to carry a firearm in the course of their employment. *See* Cal. Penal Code § 27510(b)(2)-(3).

2

Section 27510 to prohibit licensed entities from selling, supplying,

delivering, or giving possession of "semiautomatic centerfire rifles" to

any person under the age of 21 (subject to certain exceptions). S.B. 61,

2019-2020 Reg. Sess. (Cal. 2019).[2] Those decisions are consistent with

ones made by many other States, as well as our Nation's history and

tradition.

Plaintiffs challenge Section 27510, claiming that it unduly

infringes upon the Second Amendment rights of young people. But as

Amici States explain below, the Second Amendment allows States to

enact sensible public-safety regulations as long as those regulations are

consistent with our Nation's historical tradition. Exercising that

authority, a substantial majority of the States and the District of

Columbia have imposed age-based regulations on the purchase,

possession, or use of firearms within their borders, and many have

maintained those laws for more than a century. Although these

regulations differ from jurisdiction to jurisdiction, 18 States and the

---

[2] A semiautomatic rifle requires "a separate pull of the trigger to fire
each cartridge" but automatically loads the next cartridge when the
prior cartridge is fired. 18 U.S.C. § 921(a)(29). A "centerfire" is a type
of cartridge that has explosive primer in the center, rather than the
rim, of the casing. 1-ER-004.

3

District of Columbia have established a minimum age requirement of 21 for individuals to purchase at least some firearms, as California has.

The district court thus correctly held that California's statute comports with the Second Amendment.[3]  Section 27510 is comparable to regulations imposed by States on young people for over 150 years, including statutes enacted by at least 20 jurisdictions in the 1800s limiting access to firearms by people under the age of 21.  That historical record demonstrates that States have a rich tradition of imposing age-based regulations on firearm use and access, making California's decision to do so here constitutionally permissible. Plaintiffs' contrary arguments are incorrect:  A State need not identify exact analogues from the Founding Era to sustain a challenged statute, as plaintiffs suggest, and the many similar statutes enacted by States in the 1800s are appropriate analogues to California's restriction.

---

[3] As California explains, Cal. Br. 18-27, the district court also correctly held that section 27510 does not meaningfully constrain 18-to-20-year-olds' ability to commercially acquire most long guns, in that the law simply conditions the purchase of such a gun on possession of a valid hunting license.  *See* 1-ER-0011–14.  Amici States explain here why the statute is also—as applied to *all* long guns, including semiautomatic centerfire rifles—consistent with our Nation's history and tradition and accordingly constitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  *Accord* Cal. Br. 28-52.

# ARGUMENT

## I. The Second Amendment Allows States to Enact Measures to Promote Gun Safety and Protect Against Gun Violence That Are Consistent with Historical Tradition

The States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment. Indeed, in each of its

5

contemporary Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024)—the Court expressly acknowledged the critical role that States play in protecting residents from gun violence. This role is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 626. The Court explained that although States may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens on the Second Amendment right, they still possess "a variety of tools" to combat the problem of gun violence. *Id.* at 636. They may, for example, implement measures prohibiting certain groups of people from possessing firearms, such as "felons and the mentally ill," or "impos[e] conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. And the Court made the same point shortly thereafter in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" the States' "ability to devise

6

solutions to social problems that suit local needs and values." 561 U.S. at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The Supreme Court's decision in *Bruen* preserved the substantial authority that States retain in this area. At issue in *Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 597 U.S. at 11-15. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 38 n.9—failed that test, insofar as it imposed restrictions on conduct that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 38-39. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38.

7

But the Supreme Court also emphasized its intent to preserve States' substantial authority to regulate the possession, sale, and use of firearms. Most importantly, the Court explained that States can justify challenged laws not only by pointing to identical regulations from history, but to a historical tradition of "relevantly similar" firearms regulations—a form of "reasoning by analogy." *Id.* at 28-29; *accord id.* at 30 ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." (emphasis in original)). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors," the Court added, "it may still be analogous enough to pass constitutional muster." *Id.* That approach was needed, the Court elaborated, because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* at 27.

*Rahimi* confirmed the dangers in reading *Bruen* too narrowly. In that case, the Fifth Circuit had accepted a criminal defendant's Second Amendment challenge to a federal statute barring individuals subject to domestic-violence restraining orders from possessing firearms. 602 U.S.

at 689.  In doing so, the court examined a range of historical measures identified by the federal government, but it dismissed each as insufficiently similar to the challenged statute.  *United States v. Rahimi*, 61 F.4th 443, 456-60 (5th Cir. 2023), *rev'd*, 602 U.S. 680. Reversing, the Supreme Court explained that the Fifth Circuit had adopted too narrow an understanding of *Bruen*, which was "not meant to suggest a law trapped in amber."  602 U.S. at 691.  Instead, the Court reiterated, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791."  *Id.* at 691-92. "[T]he appropriate analysis," the Court continued, "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."  *Id.* at 692.  The Fifth Circuit, the Supreme Court explained, had gone astray in the manner described in *Bruen*—namely, seeking a "historical twin" from the Founding Era rather than merely a "historical analogue."  *Id.* at 701.

Multiple Justices wrote separately in *Bruen* and *Rahimi* to emphasize that the States retain substantial authority to regulate firearms.  In *Bruen*, for instance, Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the "limits of the Court's

9

decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations." 597 U.S. at 80 (internal quotation marks omitted). Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun." *Id.* at 73. Indeed, Justice Alito added, "federal law generally . . . bars the sale of a handgun to anyone under the age of 21," *id.*—a statute that operates in a similar manner to the law at issue here.

And in *Rahimi*, both Justice Kavanaugh and Justice Barrett wrote separately to explain their view of the role of history in cases in which there was no precise analogue at the Founding, with each emphasizing that the lack of such an analogue did not prohibit States from regulating. Justice Kavanaugh explained that, in his view, "post-ratification history"—that is, the interpretation and application of constitutional provisions over the generations *after* the ratification of those provisions' text—was "important" in such a case. 602 U.S. at 724-29. And Justice Barrett wrote that courts should not look for "overly specific analogues"—an approach that "assumes that founding-era legislatures maximally exercised their power to regulate." *Id.* at 739-

10

40.  Rather, she explained, courts should look to history for "principles that mark the borders" of the Second Amendment right.  *Id.* at 739.

Taken together, then, *Heller*, *McDonald*, *Bruen*, and *Rahimi* emphasize that States retain a large measure of regulatory authority over firearms, presuming they act consistently with text and history when regulating.

## II. California's Age-Based Regulation Is Consistent With Measures Taken By Other States And Upheld By Courts Across The Country

California's decision to regulate the sale of firearms to young people is well within the substantial authority that the States retain—and have exercised—in this area.  Although the States have reached different conclusions on how best to regulate selling, using, or accessing firearms—as they have historically been permitted to do, *see supra* Section I—virtually every State and the District of Columbia has determined that imposing *some* age-based limit is appropriate to promote public safety and curb gun violence within their borders.

Indeed, many States have imposed age-based restrictions that are similar to those enacted by California and challenged by plaintiffs here. Eighteen States and the District of Columbia—Connecticut, Colorado,

11

Delaware, Florida, Hawaii, Illinois, Massachusetts, Maryland,

Michigan, Nebraska, New Jersey, New York, Ohio, Rhode Island,

Vermont, Washington, Wyoming, and the District of Columbia, in

addition to California—have chosen to limit the circumstances under

which people under the age of 21 can purchase some or all firearms.[4]  At

least ten of these laws are directly analogous to the restrictions at issue

here, in that they limit the sale of at least some long guns, in addition

to handguns, to most people under the age of 21.[5]

Other States have adopted age-based firearms regulations in

other contexts.  For instance, many States have decided that it serves

---

[4]  Cal. Penal Code §§ 27505(a); 27510; Col. Rev. Stat. 18-12-112.5(a.5);
Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann.
tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a),
(d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Mass. Gen. Laws ch. 140,
§§ 129B, 131; Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws
§ 28.422(3)(b), (12); Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann.
§§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1), (12); Ohio
Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-
37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240; Wyo.
Stat. § 6-8-404(d)(i)(A).

[5]  Cal. Penal Code §§ 27505, 27510; Col. Rev. Stat. 18-12-112.5(a.5);
D.C. Code Ann. §§ 7-2502.03(a)(1), 7-2505.2(c), 22-4507; Del. Code Ann.
tit. 24, § 903; Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp.
Stat. 65/3(a), 65/4(a)(2); Mass. Gen. Laws ch. 140 §§ 129B, 131; NY
Penal Law §§ 265.65, 400.00(1)(a), (2); Vt. Stat. Ann. tit. 13, § 4020;
Wash. Rev. Code Ann. § 9.41.240.

the interest of public safety to limit the circumstances under which those under the age of 21 may carry firearms in public. To that end, at least 15 jurisdictions—California, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, Oklahoma, Rhode Island, and the District of Columbia—have concluded that people under the age of 21 should (in some States, subject to exceptions) not be able to carry certain firearms in public at all (that is, whether openly or concealed).[6] At least 19 additional States—Alaska, Arizona, Arkansas, Colorado, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Utah, Virginia, Washington, Wisconsin, and Wyoming—have enacted statutes that bar people under the age of 21 from carrying certain firearms in public in a concealed manner

---

[6] Cal. Penal Code §§ 26150, 26155, 26170; Conn. Gen. Stat. §§ 29-28(b), 29-35(a); D.C. Code § 7-2509.02(a)(1); Del. Crim. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06(1), (2)(b), 790.053(1); Ga. Code §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-129(b)(2)(A); Haw. Rev. Stat. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); 720 Ill. Comp. Stat. 5/24-1(a)(10); Md. Code Ann., Public Safety § 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); Minn. Stat. § 624.714; N.J. Stat. §§ 2C:58-3(c)(4), 2C:58-4(c); N.Y. Penal Law § 400.00(1); Okla. Stat. tit. 21 § 1272(A); R.I. Gen. Laws §§ 11-47-11, 11-47-18. The Eighth Circuit held Minnesota's age restriction unconstitutional in *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025).

(again, with some exceptions), but permit them to carry those firearms openly (or, in one State, the opposite).[7]  Finally, ten States and the District of Columbia have set a minimum age of 21 to possess certain firearms in the first place (again subject, in some cases, to exceptions).[8]  Altogether, more than 32 jurisdictions have imposed *some* restriction on the purchase, possession, or use of firearms by people under the age of 21.[9]

The restriction plaintiffs challenge, in other words, is hardly an outlier; it is consistent with the way many States have elected to handle

---

[7]  Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Colo. Rev. Stat. § 18-12-203(1)(b); Ky. Rev. Stat. § 237.110(4)(c); La. Rev. Stat. § 40:1379.3(C)(4); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. § 202.3657(3)(a)(1); N.C. Gen. Stat. § 14-415.12(a)(2); N.M. Stat. § 29-19-4(A)(3); Ohio Rev. Code § 2923.125(D)(1)(b); Or. Rev. Stat. § 166.291(1)(b); 18 Pa. Cons. Stat. § 6109(b); Utah Code § 76-11-202; Va. Code § 18.2-308.02(A); Wash. Rev. Code § 9.41.070; Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).  The Third Circuit held Pennsylvania's age restriction unconstitutional in *Lara v. Comm'r, Pa. State Police*,125 F.4th 428 (3d Cir. 2025).

[8]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Del. Crim. Code Ann. tit. 11, § 1448(a)(5); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill. Comp. Stat. 65/2(a)(1), 65/4(a)(2); Iowa Code § 724.22; Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, §§ 129B, 131(a), (d); N.J. Stat. Ann. § 2C:58-3(c)(4); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240(2), (3).

[9]  *See supra* nn.4-8.

this issue. And many courts across the country have upheld state laws that limit firearm access for people under the age of 21.

Most recently, the Fourth Circuit upheld a federal statute that restricts the commercial sale of handguns to individuals under the age of 21 after thoroughly reviewing the history of regulations in this area. *McCoy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 F.4th 568 (4th Cir. 2025), *cert. pet'ns pending*, Nos. 25-24, 25-132 (U.S.). In *McCoy*, the court first undertook a lengthy analysis of the common-law tradition regarding the capacity of individuals under the age of 21 to contract at all, explaining that "there was an early American tradition of burdening the ability of 18- to 20-year-olds to purchase goods, including firearms." *Id.* at 577. As required under *Bruen* and *Rahimi*, the court examined both the "how" and the "why" of such restrictions at the time of Founding. It explained that the Founding-Era restrictions and the federal restriction before the court were "virtually the same" in how they burdened the Second Amendment right. *Id.* And the federal restriction "share[d] a common rationale" with Founding-Era restrictions, because "[b]oth were motivated by a recognition that individuals under the age of 21 lack good judgment and reason." *Id.*

15

Accordingly, both the "how" and the "why" of the federal restriction and founding-era restrictions on the commercial sale of firearms were "relevantly similar." *Id.* The court then turned to nineteenth-century history as "'confirmation' of original meaning," *id.* at 578 (quoting *Bruen*, 597 U.S. at 37), explaining that during this time a large range of States enacted restrictions on the use or purchase of firearms by those under the age of 21, *id.* at 578-79. In short, the court concluded, "[t]here plainly exists a robust tradition that supports the constitutionality of" a restriction on handgun sales to individuals under the age of 21. *Id.* at 580.

The Eleventh Circuit, sitting en banc, likewise recently upheld Florida's restriction on sales of firearms to individuals under 21—a statute that if anything reaches more broadly than California's, in that it does not exempt individuals who have passed a training course and obtained a hunting license. *See Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc), *cert. pet'n pending*, No. 24-1185 (U.S.). For similar reasons as in *McCoy*, the court found that the Florida law was relevantly similar to historical restrictions. Just as "Founding-era law precluded individuals under the age of 21 from purchasing arms

16

because they lacked cash and the capacity to contract" and "[a]ccess to arms was a matter of parental consent[,]" "the Florida law . . . prohibits purchase but preserves access to firearms with parental consent," in that a parent may purchase a regulated firearm and gift it to an under-21 individual. *Id.* at 1123. And, the court explained, the "why" was also the same—"individuals under the age of 21 have not reached the age of reason and lack the judgment and discretion to purchase firearms responsibly." *Id.* at 1122-23. The court also examined "the laws from the mid-to-late nineteenth century [to] make explicit what was implicit at the Founding: laws may regulate the purchase of firearms by minors." *Id.* at 1124. Ultimately, the court reasoned that Florida's firearm regulation was lawful because, "[f]rom the Founding to the late-nineteenth century, our law limited the purchase of firearms by minors in different ways." *Id.* at 1130.

In short, California's decision to enact a statute regulating the sale of firearms to certain young people is consistent with other States' approaches in this area, which have been upheld as constitutional in light of our Nation's historical tradition.

## III.  Plaintiffs' Arguments Lack Merit

Amici States agree with California that the challenged statute is constitutional.  As California explains, among other things, the statute is consistent with the Nation's historical tradition:  Since the Founding, States have concluded that it best serves the interests of public safety to prohibit certain individuals from accessing firearms, and for over 150 years States have enacted statutes that do so by specifically restricting access to firearms for those under the age of 21.  Amici States write separately to respond to several specific arguments plaintiffs advance.

First, plaintiffs are wrong to suggest that a State is required to identify a historical analogue from the Founding Era.  Pls' Br. ("Br.") 48-59.  As plaintiffs concede, *id.* at 43 ("the Court formally left open the question whether 1791 or 1868 is the controlling date for constitutional analysis"), the Supreme Court has never announced such a rule:  *Heller*, for instance, described Reconstruction Era perspectives on the scope of the Second Amendment as "instructive," 554 U.S. at 615, and *McDonald* (which held that the Second Amendment was incorporated against the States in the late 1800s, with the ratification of the Fourteenth Amendment) conducted an extensive analysis of the evidence of the

18

Reconstruction Era understanding of the scope of the right to bear arms, 561 U.S. at 770-78. Justice Thomas even wrote separately in *McDonald* to set out his understanding of the Fourteenth Amendment as "agreed upon by those who ratified it," *id.* at 813 (Thomas, J., concurring in part and in the judgment)—i.e., the Reconstruction Era generation.

The Court's opinions in *Bruen* and *Rahimi* are to the same effect. *Bruen*, like *McDonald*, extensively examined both antebellum and postbellum historical evidence. *See* 597 U.S. at 50-66. And although the Court there observed the existence of "an ongoing scholarly debate on whether courts should primarily rely on" historical accounts from 1791, when the Second Amendment was ratified, or 1868, when the Fourteenth Amendment was ratified, *id.* at 37; *accord id.* at 82-83 (Barrett, J., concurring), it did not, as plaintiffs appear to suggest, Br. 43-44, implicitly resolve that debate in favor of Founding Era sources, given the Court's conclusion that the statute challenged there was not compatible with historical understandings of the Second Amendment irrespective of the timeframe.

19

*Rahimi*, if anything, refutes the idea that a State is required to point to analogous laws from the Founding Era to sustain a statutory restriction on the right to bear arms. When holding unconstitutional the federal law barring individuals subject to domestic-violence restraining orders, the Fifth Circuit reasoned in substantial part that there was no Founding Era analogue to the challenged law. *Rahimi*, 61 F.4th at 456-60. But the Supreme Court reversed. *Rahimi*, 602 U.S. at 692. It explained that a State defending a firearm statute need not establish that it is "identical to ones that could be found in 1791," *id.* at 692. And multiple Justices wrote separately to emphasize this very point: Justice Kavanaugh explained that, in his view, what he termed "post-ratification history" was particularly important in cases where "the pre-ratification history is elusive or inconclusive," *id.* at 723 (concurring opinion), a point echoed by Justice Barrett, *see id.* at 738 (concurring opinion) ("postenactment history can be an important tool" in offering "persuasive evidence of the original meaning," among other things). Justice Barrett added that a rule requiring the government to "produce a founding-era relative of the challenged regulation" would "assume[] that founding-era legislatures maximally exercised their

power to regulate," contrary to historical practice and common sense. *Id.* at 739-40.

Plaintiffs are thus wrong to suggest that evidence from after the Founding Era is "powerless" to establish a historical tradition relevant to the Second Amendment analysis. Br. 59. To the contrary, "enduring" and "representative" statutes from after the Founding, *Bruen*, 597 U.S. at 30-31, are highly probative to the analysis, including because they reflect that generation's collective "understanding of the Constitution's authorizations and limitations," *Rahimi*, 602 U.S. at 724 (Kavanaugh, J., concurring), and "provide persuasive evidence of the original meaning" of the Second Amendment, *id.* at 738 (Barrett, J., concurring). In *Rahimi*'s words, Reconstruction Era statutes of the kind California has amassed illustrate "the principles that underpin our regulatory tradition." *Id.* at 692 (majority opinion).

Second, plaintiffs are wrong to suggest that the long line of statutes the district court identified from the 1800s is insufficient to justify the challenged statute even setting aside those statutes' time of passage. Br. 60. From the early- to mid-1800s, the record shows that many jurisdictions prohibited the sale or loan of any dangerous weapon

21

to "minors" (i.e., any individual under the age of 21), others prohibited sale of gunpowder or other accoutrements to minors, and still others punished parents for firearm infractions committed by minors. 1-ER-0022. By the close of the 1800s, 19 States and the District of Columbia, or just under half the States in the Union, "had enacted laws expressly restricting the ability of persons under 21 to purchase or use firearms." 1-ER-0023. These statutes easily pass muster as "analogues," *Rahimi*, 602 U.S. at 700, to the challenged law.

Plaintiffs' contrary argument, Br. 64-65, lacks merit. Plaintiffs contend that the 20 statutes that the district court identified cannot provide analogues to the challenged statute because (a); many (but not all) targeted only "dangerous" or concealable weapons; and (b) some provided carveouts for parental consent or mode of carriage.[10] *Id.* But *Rahimi* rejected just this form of "divide-and-conquer approach to the

_____

[10] Plaintiffs also argue that the statutes cannot provide analogues because this court "already rejected reliance on all those laws" in *Jones v. Bonta*, 34 F.4th 704 (9th Cir.), *vacated on rehearing*, 47 F.4th 1124 (9th Cir. 2022). However, as plaintiffs concede, Br. 5, the opinion in *Jones v. Bonta* was vacated in the wake of *Bruen*, and so has no precedential effect. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("a decision that has been vacated has no precedential authority whatsoever").

historical evidence." *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024). The Fifth Circuit in that case, too, reasoned that the government's proposed analogues were each individually deficient on some basis, including because they relied on different enforcement mechanisms or swept more narrowly than the challenged statute. *See Rahimi*, 61 F.4th at 458-60. But the Supreme Court rejected this kind of approach, under which a court isolates each historical precursor and asks whether it differs from the challenged regulation in some way. It explained that the Fifth Circuit had erred in seeking a "historical twin" rather than considering only whether the federal law "comport[ed] with the principles underlying the Second Amendment." *Rahimi*, 602 U.S. at 692, 700-701.

Plaintiffs' argument suffers from the same flaw. Whether or not the challenged law is a "twin" to the many state statutes that the district court identified from the late 1800s, it is "relevantly similar" in every key respect, *id.* at 700-01, and at minimum imposes no greater burden on the 18-to-20-year-old plaintiffs than the historical statutes did. These historical statutes generally restricted the sale of firearms to "minors" without exception for licensing or job duties. *See, e.g.*, 16 Del.

Laws 716 (1881) (prohibiting sale of "a deadly weapon to a minor" other than a pocket knife); 1881 Ill. Laws 73 (prohibiting any individual other than a minor's parent or guardian from selling a "deadly weapon" to minors); 27 Stat. 116-17 (1892) (prohibiting sale of "any deadly or dangerous weapons" to "any minor under the age of twenty-one years" in the District of Columbia). As the district court explained, "Section 27510 is not more restrictive in its scope than the limitations traditionally placed on individuals under 21," both at the Founding and in the nineteenth century, and "the limitations it established were put in place for the same reasons." 1-ER-0024.

Finally, plaintiffs' argument that, at "the Founding . . . there were zero restrictions of any kind on 18-to-20-year-olds, period," Br. 16, is demonstrably false. As the district court observed, and as the Fourth and Eleventh Circuits also explained, individuals under the age of 21 were largely unable to purchase firearms during the Founding Era. 1-ER-0021; *see Nat'l Rifle Ass'n*, 133 F.4th at 1118; *McCoy*, 140 F.4th at 576-77. Plaintiffs assert that the Militia Act passed by the Second Congress and the States' militia laws demonstrate that individuals under 21 had a right to purchase firearms. Br. 45-48. But this is

24

incorrect; in fact, many state militia laws recognized that individuals under the age of 21 would be unable to purchase firearms and made arrangements accordingly. As California's evidence shows, "over a third of state militia statutes in the Founding Era required parents or guardians to provide firearms to militia members under the age of 21," while other States "exempted minors from providing their own firearm." 1-ER-0020–21.

Indeed, California's restriction on the sale of firearms to *some* individuals under the age of 21 is "less restrictive than the law at the Founding in some ways" because "[t]he militia laws did not empower *any* individuals under the age of 21 to purchase arms." *Nat'l Rifle Ass'n*, 133 F.4th at 1123 (emphasis added). Not only does California's long gun age restriction exempt all individuals who obtain the proper license, but California's general age restriction "contains exceptions permitting the purchase of [restricted arms] by peace officers . . . or military personnel," an "exception [that] is *more generous* than the Founding-era militia laws because it empowers minors to purchase firearms when needed for public service." *Id.* (emphasis in original).

25

Section 27510 is relevantly similar to multiple historical analogues, both from the Founding and the nineteenth century. Plaintiffs are wrong to demand that courts both look solely at the Founding Era for historical analogues and demand a tighter historical fit than that between the historical statutes the district court identified and the challenged measure.

## CONCLUSION

For these reasons, the court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
AKANKSHA SHAH
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of*
  *Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. MLK Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

November 6, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,279 words, excluding the parts of the brief exempted by Rule 32(f).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.


/s/ Alex Hemmer
ALEX HEMMER

November 6, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER