# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

David H. Thompson
dthompson@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

(202) 220-9600
Fax (202) 220-9601

July 8, 2026

**<u>VIA ACMS</u>**
Molly Dwyer, Clerk of Court
United States Court of Appeals
   for the Ninth Circuit
James R. Browning Courthouse
95 7th Street
San Francisco, CA  94103

RE: *PWGG v. Bonta*, No. 25-2509

Dear Ms. Dwyer:

On June 25, 2026, the Court invited the parties to file supplemental letter briefs "addressing the impact of *Wolford v. Lopez*, 609 U.S. --- (2026), on this case." Order, Doc. 53 (June 25, 2026). *Wolford* involved a Hawaii law that prohibits any person from carrying a firearm on private property open to the public without express authorization. *See* 609 U.S. ---, 2026 WL 1825723, at \*7 (U.S. June 25, 2026). The Supreme Court held that the law violates the Second and Fourteenth Amendments. *Id*. at \*14. The Court's analysis makes all the more clear that the California law at issue here—which prohibits 18-to-20-year-olds from purchasing long guns unless they acquire a hunting license and wholly bans these adult citizens from purchasing semiautomatic centerfire rifles—is unconstitutional. First, *Wolford* demonstrates that Section 27510 implicates the Second Amendment's plain text. Second, *Wolford* makes clear that the State's primary historical analogue fails.

## I.     *Wolford* demonstrates that Section 27510 implicates the Second Amendment's plain text.

The district court held that "Section 27510 is a commercial restriction that does not meaningfully impair 18-to-20-year-olds' access to firearms," which (the court said) means it is "not covered by the Second Amendment's plain text at the first step of the *Bruen* test." *Chavez v. Bonta*, 773 F. Supp. 3d 1028, 1038 (S.D. Cal.

Molly Dwyer, Clerk
July 8, 2026
Page 2 of 5

2025). The State has defended that logic insofar as it applies to Section 27510's hunting license requirement. *See* Defs.' Br. 16–17, Doc. 27 (Oct. 30, 2025). In doing so, the State has relied in part on decisions holding that challenges to "shall-issue" licensing regimes generally fail at *Bruen*'s threshold, textual inquiry. *See id*. at 25 (collecting cases).

That logic does not survive *Wolford*, for the Supreme Court made clear that *Bruen*'s textual inquiry entails *only* three questions:

> First, does the law apply to the people—which is to say, to all members of the political community? Second, does it concern any form of Arms, *i.e.*, any weapon customarily used for offensive or defensive purposes? Third, does the law place any restrictions on either the keeping (*i.e.*, possession) or the bearing (*i.e.*, carrying) of arms?

2026 WL 1825723, at *6 (cleaned up). Courts cannot "smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry." *Id*. at *14 n.1 (Barrett, J., concurring); *see also id*. at *26 (Jackson, J., dissenting) (observing the Court held that, at *Bruen*'s threshold, "courts must look *only* to the 'plain text' of the Second Amendment devoid of any historical understanding" (emphasis in original)). So, if the answer to the three questions asked by the *Wolford* majority is yes, the challenged restriction "falls within the plain text of the Second Amendment" and "is presumptively unconstitutional." *Id*. at *6.

Section 27510 prohibits 18-to-20-year-olds from purchasing long guns: all long guns, unless the 18-to-20-year-old has taken a hunting class; and semiautomatic centerfire rifles in any circumstance. Asking of these restrictions each question posed by the *Wolford* majority, the answer is yes. First, there is no dispute that 18-to-20-year-olds are part of the political community. *See* Defs.' Br. 17 n.4. Second, there can be no dispute that the long guns covered by Section 27510 are "weapon[s] customarily used for offensive or defensive purposes[.]" *Wolford*, 2026 WL 1825723, at *6.

Third, this Court has held that a "meaningful constraint" on the purchase of arms restricts the keeping and bearing of arms. *See Nguyen v. Bonta*, 140 F.4th 1237, 1243 (9th Cir. 2025). Both components of Section 27510 bar sales of certain arms to certain individuals, and this Court has been clear that this is enough to establish a "meaningful constraint." *B&L Prods. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024); *see also* Pls.' Br. 29–39, Doc. 12 (June 30, 2025). To the extent this Court's

Molly Dwyer, Clerk
July 8, 2026
Page 3 of 5

precedents could be read to suggest otherwise, *Wolford* abrogates them. Again, *Wolford* held that the question at *Bruen*'s textual stage is whether the challenged law "place[s] *any* restrictions" on the possession or carry of arms. 2026 WL 1825723, at *6 (emphasis added). Section 27510 directly restricts the acquisition, and thus the possession and carry, of certain firearms. That is the whole point. *See* Defs.' Br. 4–5. Accordingly, both components of Section 27510 implicate the Second Amendment's plain text, which means they are presumptively unconstitutional.

## II.     *Wolford* makes clear that the State's primary historical analogue fails.

The district court also held that Section 27510's restrictions are consistent with this Nation's historical tradition of firearms regulation. *See Chavez*, 773 F. Supp. 3d at 1044–45. The State has defended that holding, relying primarily on its claim that, at common law, persons under the age of twenty-one lacked the capacity to contract or purchase goods on credit. *See* Defs.' Br. 29–32. According to the State, these restrictions "rendered 18-to-20-year-olds unable to purchase most goods at the founding"—including firearms. *Id*. at 30.

The State has not carried its burden of proving that this is true. *See* Pls.' Reply 18–21, Doc. 41 (Dec. 22, 2025). But even putting that problem to the side, *Wolford* demonstrates the flaws in the State's argument. *Wolford* reiterated that, in considering whether a historical analogue is relevantly similar to a challenged restriction, a court must consider both "how" *and* "why" the analogue restricted the keeping or bearing of arms. 2026 WL 1825723, at *6; *see also United States v. Hemani*, 2026 WL 1751710, at *5 (U.S. June 18, 2026). As the Court put it,

> the "how" and "why" of the historical analogue and modern regulation must be close enough to enable a court to say: "Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is likewise consistent with that right."

*Wolford*, 2026 WL 1825723, at *6.

The Court's analysis gives content to this inquiry. Hawaii claimed its restriction was comparable to historical laws that, at first glance, may have appeared quite similar: they, too, prohibited the carry of arms on at least some private property open to the public (at least the Court assumed as much). *See id*. at *12–13 & n.15. Notwithstanding the similarities, the Court explained that Hawaii's proposed

Molly Dwyer, Clerk
July 8, 2026
Page 4 of 5

analogues were different from the challenged restriction in both how and why they burdened the Second Amendment protected right. With respect to "how," the historical laws restricted the right to carry only on "land where game could be found, not retail establishments that residents of cities and suburbs frequent as part of their daily routines." *Id*. at *13. With respect to "why," the historical laws aimed "to prevent the distinctive harms and risks associated with unauthorized hunting," *id*., while the apparent aim of Hawaii's law was simply to prevent law-abiding citizens from carrying in public, *see id*. at *11.

California's proposed analogue fails for similar reasons. To begin, Founding-era contracting restrictions differed from Section 27510 in how they burdened the Second Amendment protected right. Even assuming these restrictions actually prevented 18-to-20-year-olds from *purchasing* firearms (which Plaintiffs have demonstrated is not the case), they did not prevent 18-to-20-year-olds from *acquiring* firearms. They could not have, for 18-to-20-year-olds were often *required* to own firearms. *See* Pls.' Reply Br. 22–23. At most, the restrictions meant 18-to-20-year-olds had to acquire firearms from their parents. But that was not just true of firearms; it was also true of all comparable goods. *See id*. at 29–30. As the State has explained, 18-to-20-year-olds were subject to the power of their parents, who had a duty to protect them. *See id*.; *see also* Pls.' Br. 50–51. In that socioeconomic context, requiring 18-to-20-year-olds to obtain firearms from their parents was simply an incidental byproduct of a law that had nothing to do with firearms. Today, by contrast, 18-to-20-year-olds are treated as economically independent; the law no longer presumes that their parents will supply them with anything. Prohibiting 18-to-20-year-olds from purchasing firearms when they are otherwise treated as independent imposes a very different kind of burden. *See* Pls.' Br. 50–53.

Founding-era contracting restrictions also differed from California's law in *why* they burdened the Second Amendment protected right. Section 27510 restricts 18-to-20-year-olds from purchasing firearms because California does not think these legal adults can be trusted with firearms. *See* Defs.' Br. 16. That is not remotely why the common law restricted 18-to-20-year-olds' ability to contract, as evidenced by the fact that many jurisdictions *required* these individuals to own firearms. Rather, the common law restricted 18-to-20-year-olds' ability to contract out of concern that they might enter into unwise agreements. *See, e.g.*, 1 SAMUEL COMYN, A TREATISE OF THE LAW RELATIVE TO CONTRACTS AND AGREEMENTS NOT UNDER SEAL 148 (1807) (noting the restriction existed because legal infants were "supposed to want judgment and discretion in their contracts and transactions with others" and were at risk of being "imposed upon or overreached by persons of more years and

Molly Dwyer, Clerk
July 8, 2026
Page 5 of 5

experience"). That is why the restriction applied to contracts for *all* goods—not merely contracts for firearms.

In sum, *Wolford* makes clear that common-law restrictions on minors' ability to form contracts cannot justify Section 27510 merely because those restrictions may have had the practical effect of preventing 18-to-20-year-olds from purchasing firearms. Instead, this Court must ask: Even if we assume that it was accepted that any incidental effect of the common law's restrictions on legal minors' ability to form contracts were consistent with the Second Amendment right, can we infer that it is also consistent with that right to directly ban a subset of legal adults from purchasing firearms? *See Wolford*, 2026 WL 1825723, at *13. As in *Wolford*, "[t]he question answers itself." *Id*.

\*\*\*

*Wolford* provides further confirmation that Section 27510 violates the Second Amendment.

Sincerely,

John William Dillon
DILLON LAW GROUP, APC
2647 Gateway Road
Suite 105, No. 255
Carlsbad, CA 92009
rcardozo@reedsmith.com

/s/ David H. Thompson
David H. Thompson
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees*

cc: All counsel of record via ACMS

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2509

I am the attorney or self-represented party.

**This brief contains** 1,620 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated June 25, 2026.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/David H. Thompson   **Date** July 8, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*