

CALIFORNIA
**DEPARTMENT OF JUSTICE**

**Rob Bonta**
*Attorney General*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102

Public: (415) 510-4400
Telephone: (415) 510-3879
Facsimile: (415) 703-2552
E-Mail: Jane.Reilley@doj.ca.gov

July 8, 2026

**Via ACMS**
Molly Dwyer, Clerk of Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

RE: *PWGG v. Bonta*, No. 25-2509
   <u>Response to Supplemental Briefing Order Regarding *Wolford v. Lopez*</u>

Dear Ms. Dwyer,

The Attorney General submits this supplemental letter brief addressing the impact of *Wolford v. Lopez*, 609 U.S. __, 2026 WL 1825723 (U.S. June 25, 2026). *Wolford* does not alter the framework for considering Second Amendment claims or change the conclusion that the district court's judgment should be affirmed. Shortly after *Wolford* was issued, the Supreme Court considered whether to "GVR" (grant, vacate, and remand) several petitions presenting challenges to laws involving firearms restrictions on 18-to-20-year olds. "In many instances," the Court holds certiorari petitions pending a plenary ruling, and then enters a GVR order for reconsideration in light of the intervening Supreme Court ruling.

July 8, 2026
Page 2

Shapiro, et al., *Supreme Court Practice* § 5.12, p. 5-38 (11th ed. 2019).  Here, however, the Court did not GVR cases involving firearms restrictions on 18-to-20-year olds, strongly signaling that *Wolford* does not change the relevant analysis.[1]

*Wolford* reiterated that the analysis required by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), "involves two steps."  2026 WL 1825723, at *6.  The first asks whether the challenged law "clashes with 'the plain text'" of the Second Amendment and "entails three subsidiary questions":  does the law apply to "the people"; concern "any form of 'Arms,'"; and place "any restrictions on the 'keeping' (*i.e.*, possession) or the 'bearing' (*i.e.*, carrying) of arms."  *Id*.  If the answer to all three questions is "yes," the law falls "within the plain text of the Second Amendment" and is "presumptively unconstitutional."  *Id.* Applying this framework, the Supreme Court concluded that Hawaii's law falls within the Second Amendment's plain text because it "severely hampers the ability of a law-abiding citizen" to carry firearms in public.  *Id.* at *10.

By contrast, Penal Code Section 27510's hunting license provisions do not restrict 18-to-20 year olds from keeping or bearing the types of long guns subject

---

[1] *See NRA v. Glass*, No. 24-1185 (June 30, 2026) (denying petition for writ of certiorari, rather than GVR'ing); *Bivens v. Second Amdt. Found., et al.*, No. 24-1329 (June 30, 2026) (same); *McCoy v. Bureau of Alcohol, et al.*, No. 25-24 (June 30, 2026) (same); *W. Va. Citizens Defense League v. Bureau of Alcohol, et al.*, No. 25-132 (June 30, 2026) (same).

July 8, 2026
Page 3

to the license requirement. *Wolford* did not address or disturb *Bruen*'s approval of "shall-issue licensing" regimes, 597 U.S. at 38 n.9, which is an independent and adequate basis to uphold the hunting licensing requirement. *See* Answering Br. 24-27. Nor does *Wolford* undermine the framework for evaluating laws regulating ancillary conduct under a meaningful constraint standard. *E.g.*, *B&L Prods. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024). That test is consistent with *Wolford*'s third subsidiary question because it evaluates whether a challenged law restricts individuals from keeping and bearing arms. *Id.*

With respect to *Bruen*'s historical analysis, *Wolford* identified "three important inquiries that courts should undertake in evaluating proffered historical analogues," including the number of jurisdictions that adopted them, the extent to which they were well-accepted, and whether they are "relevantly similar" to the challenged law in terms of "how" and "why" they restricted the keeping and bearing of arms. 2026 WL 1825723, at *6. As to the third inquiry, *Wolford* acknowledged that "[i]t undeniably necessitates an exercise of judgment." *Id.* The "how" and "why" of the historical analogue and modern law "must be close enough" to say: "Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is likewise consistent with that right." *Id.*

July 8, 2026
Page 4

Conducting that inquiry, the Court concluded that historical laws were "vastly different" from Hawaii's law because they consisted "almost entirely of laws that prohibited unauthorized hunting of deer or small game on someone else's private property." 2026 WL 1825723, at *12. They had "little if any impact" on the right to self-defense and their "obvious aim was to prevent the distinctive harms and risks associated with unauthorized hunting," namely, the theft of game, risk of inadvertently inflicting death or serious injury on the property, and disturbing the tranquility of others with the sound of gunshots. *Id*. at *13. Hawaii's law "has none of these effects." *Id*.

In contrast, the analogues here satisfy each of *Wolford*'s historical considerations. They were widely adopted. At the founding, it was a "well understood and engrained principle of American law" that those under 21 could not, because of concerns about their capacity to make judgments, bind themselves by contract; they were therefore generally unable to purchase weapons. Answering Br. 29-30 (quoting *McCoy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 F.4th 568, 575 (4th Cir. 2025)). Starting in 1856, States began to codify that founding-era principle in the context of firearms transactions, as the commercial market for firearms increased. By the end of the nineteenth century, at least 20 jurisdictions passed laws prohibiting the sale of firearms to individuals under 21.

July 8, 2026
Page 5

*Id.* at 34-35.  These laws were popular and went largely unchallenged; the only known case in which such a law was challenged upheld it as constitutional. Answering Br. 36-37 (citing *State v. Callicut*, 69 Tenn. 714, 716-717 (1878)).

The analogues are also relevantly similar to Penal Code Section 27510.  As to the "how," the historical laws restricted the same people (those under 21) from purchasing firearms on their own.  And as to the "why," both the historical laws and Penal Code Section 27510 address the concern that those under 21 lack the maturity and judgment to make such purchases responsibly.  Answering Br. 47-52. Because the historical analogues here "were understood to be compatible with the right codified by the Second Amendment," this Court can infer that Penal Code Section 27510's hunting license provisions and semiautomatic centerfire rifle restrictions are "likewise consistent with that right."   2026 WL 1825723, at *6.

Sincerely,

*/s/ Jane Reilley*

JANE REILLEY
Deputy Solicitor General

For    ROB BONTA
Attorney General

cc:  All Counsel of Record (via ACMS)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 25-2509

I am the attorney or self-represented party.

**This brief contains** 964 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated June 25, 2026.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jane Reilley **Date** July 8, 2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*